and we'll start with you, the appellant, Mr. Janich. Go ahead. Thank you. May it please the court, my name is Eitan Castle Janich and I'm representing Melvin Swanson in this appeal. In February 2020, an ALJ denied Swanson's disability claims. He appealed this denial to district court and the court reversed the ALJ's decision and remanded his claims for new hearing. After a second hearing, the ALJ found Swanson disabled beginning February 1st of 2021, but Swanson has actually been unable to work since December 7th, 2016 due to the combined functional effects of his many severe physical and mental impairments. This case involves the issue of whether the ALJ's non-disability finding between December 2016 and January 2021 is not by substantial evidence or is based on harmful legal error. The ALJ erred by improperly rejecting the medical opinions of two medical reviewers, Dr. Packer and Dr. Sidhu. Mr. Janich, I do have a question. I went back and I looked at the prior district court order when the case was remanded and I see a lot of the district court's reasons for remanding are still applicable here. The ALJ decision remains largely the same. I'm surprised that you didn't mention that in your briefing. Do you agree that the ALJ largely repeated the same errors? Well, yes, he did and I suppose I should have mentioned it more strongly in my briefing, but it's an ongoing problem that we have with certain ALJs that when a case is remanded, we end up with a new decision. I mean, it was striking. We sort put the orders side-by-side, the opinions side-by-side and it's striking to me how similar they were. Well, I think, but with talking about ongoing problems and maybe you can, the district court explained to you that you spent pages of your brief below simply summarizing clinical findings and that was not sufficient to present an argument for judicial brief. Numerous judges keep telling you, including several panels of the Ninth Circuit, have told you that this practice is not appropriate, but you keep doing that. Why is the message not clearly coming through to you? I mean, we can look at, you know, if we look at the Wise case, that's a Ninth Circuit case, also lists various medical findings and asserts that those findings substantiate opinions, but because that assertion is unaccompanied by specific analysis, any argument based on the evidence is waived. And I can list other cases, so this isn't, you're not helping us. Okay, so let me keep telling you what you have to do and you can't just cut and paste and spit it out and say this proves my case. That's not the way it works. Right, so the issue here, the problem we have, you know, everyone looks primarily, the best evidence in a social security disability case is the opinion of a treating physician or an examining physician. People have actually treated or examined the individual. This case had the unusual problem that there are no treating physician or examining, excuse me, there's no treating physician opinions, the only examining physician opinion is the opinion from Dr. Ford, who is an examining psychologist, and her opinion was rejected wholesale. Now, the ALJ's reasoning for rejecting the two opinions we do have, and once again, opinions are the most important thing. I mean, there's a, if you just have evidence, well then the judge still has to review everything. The judge has to, the judge can't just ignore all the evidence that shows that his analysis is wrong. So, in this case, the judge, the ALJ, looked at the examining physician opinions from Dr. Sidhu and Dr. Packer and said, well, these opinions are not supported by the medical evidence. So, how do you show that it's not supported by the medical evidence other than by showing all of the clinical findings in the medical evidence that show that, indeed, these opinions are consistent with all of that? But all you do is you slap those opinions in there, and then you say, this supports my case. You don't do the work. You don't do the heavy lifting. So, the thing is, as an example, one of the issues in this case involves the treatment of his migraines, and the ALJ said, no, it's not even a severe impairment. And so, in my arguments, I present the evidence that shows that, yes, indeed. Organizational is another thing. I mean, I suppose I could have pulled all the migraine evidence out, put it in one block, and I kind of did that in your client. Counsel, to Judge Callahan's point, I guess this is the thing. We're having to do all of the work. We're having to look at all of these opinions and picking out, for example, that Dr. Packers and Dr. Sidhu, according to the ALJ, relied on findings from records before the relevant period. But that's actually incorrect. And that's not something that you point out specifically to us. But we have to look for that stuff within the records. That's, I think, what Judge Callahan is pointing to. That criticism is well taken. I'm not going to argue about that. I could have done a better job of pointing to this, organizing it to make it more clear which evidence. But I do argue that the ALJ was wrong, and I point to the evidence that shows that they also relied on evidence that is from the correct time period. There are so many mistakes in this record. I realize you're focusing on this issue. Like I say, it's a problem I have in every case where there aren't strong medical opinions from people who know who treated the person. You kind of have to rely on what opinions you have. The clinical findings that I cite include showing the treatment he was getting. He had surgery on his cervical spine. These are all things that show that there is a basis for the opinions of Dr. Sidhu and Dr. Packer. I mean, the ALJ also mentioned that he was taking opiates, but that was from an evaluation from 2016, not the 2020 evaluation. So I guess that's the kind of stuff that would be helpful for you to point out to us, instead of us having to go on a search and rescue mission to try to find the information within the records that are available. I do point that out in my reply brief, that he was citing evidence. The government actually pointed to that as well. I said, well, the ALJ cited that, that he was relying on evidence from earlier. I have to point to that evidence as well, even though it's from an earlier period. You're kind of digging in on this, and I don't think you're taking my point, even though other people have taken it. But let's go on and talk about, you request a remand for an award of benefits. But even if we were to credit as true the evidence the ALJ rejected, wouldn't we still need new vocational expert testimony to determine whether there are jobs that your client could have performed with a more limited RFC? No, because at least not since 2018. Because as of March of 2018, he was 50 years old. Well, okay. I have that he turned 50 on March of 2020. Am I wrong? Yes, I believe. Wouldn't we still need to further determine whether your client was disabled between December 2016 and 2018? Don't we still have to determine that? Even if you say 2018, or if it's 2020, whatever it is, don't we still have to determine? There's time in here that you're asking for benefits that it does not cover by the presumption. Okay. Your Honor, he was 50 years old on June 30th of 2018. Actually, March 18 is the correct date on that. So as of March of 2018, he was limited to sedentary work. So if you accept that the evidence of the ALJ improperly rejected shows that he's been limited to no more than sedentary work since March of 2018, then there is no other option than a finding of disability based on the medical vocational guidelines. But that doesn't cover, he doesn't get the presumption from December 7th of 2016 to March 1 of 2018. That is correct. So don't we have to, we have to look at that. So how do you get, how do we give you benefits when there hasn't been, a vocational expert hasn't looked at that time period with a more limited RFC? Well, it's a point well taken, but for the prior two years, you would have to prove, and you would have to be able to find that the evidence that was improperly rejected shows that he was unable to perform even full-time sedentary work. And the finding of that he could not perform full-time sedentary work does support the award of benefits for that prior period. Okay, anywhere in the record is there, do we have, we don't have a vocational expert testimony for that period of time before the presumption applies, do we? With a limited RFC. And now suddenly I'm going to become the expert, and I'm going to be the expert, and I'm going to do the limited RFC and say he gets benefits for that period of time. Is that what you're asking? No, what I'm saying is that we do have evidence from the vocational expert that a person who has the limitations that Swanson described in his testimony could not perform any work. We do have that testimony. So if you would fully accept Swanson's testimony about his need to lie down and his need to change positions, then yes, that does support finding disability. If you believe that, this is the court's discretion, if the court believes that there's serious doubt about that earlier time period, then you should not award benefits, but instead should remand. The doctors don't make disability determinations, do they? They don't make the levels of disability determination. No, they don't. They determine a person's limitations is all. And one of the doctors did conclude that he could not even perform sedentary work. That was Dr. Packer. Dr. Sidhu, I think it was more sedentary. But none of them said that he was able to do more than sedentary. So I'm just pointing out that, yes, there's options that you could award benefits as of in turning 50 in 2018, based on this evidence, or you could award benefits if you believe that the evidence shows that... Is that presumption rebuttable, or is it a non-rebuttable presumption when you turn 50? And based on the facts in this case, it's non-rebuttable. No, no, no, no, no. I don't want to know whether based on the facts of this case, I want to know whether it's a rebuttable presumption or whether it says somewhere, once you turn 50, it is not rebuttable. Yes, it is non-rebuttable. The medical vocational guidelines state that if you meet the criteria in those guidelines, it tells you you're either disabled or if you're not disabled, then you have to go on to step five. You have to go to further analysis. But if the grid is as people call it, the medical vocational guidelines, if you plug in his age, his limitation to sedentary work, his limited education, his lack of transferable skills, and all of this is undisputed. Okay, we've taken you over your three minutes over your time. I want to find out if my colleagues have any additional questions. Okay, we don't. So that takes up your time. I'll consider giving you a minute for rebuttal depending on what the government says. Good morning. Good morning. May it please the Court, Lori Looklis appearing on behalf of the Commissioner of Social Security. We're asking this Court to affirm the judgment of the District Court that upheld the ALJ's decision in this case, which found that Mr. Swanson was not disabled until February 1st, 2021. Now, that's the period we're looking at from December 2016 until February 1st, 2021. And Mr. Swanson has not showed that he was disabled during that time period. In fact, the evidence overwhelmingly shows that he was not. And I would point to looking to the decision as a whole in terms of the ALJ's reference to his money. We have to look at the decision in all its parts, including what the ALJ said about Dr. Packer and Dr. Sidhu. The judge reasoned that they were relying on findings from the records from before the relevant period. That's actually incorrect. Would you concede that? I think some of the evidence they were relying on was during the period that's not at issue. Right. But that's not what the ALJ said, right, as a reason for discounting that. Correct. But as you pointed out, Mr. Swanson, plaintiff has not, appellant has not argued that. And I think they forwarded that argument that the ALJ was incorrect in that regard. They haven't pointed that out. And I think that Did you argue that in your briefing? Did you argue that in your briefing? In our briefing, we argued that the ALJ gave reasons for why the ALJ found that those opinions were not supported. No, but you just argued something else. Did you argue the waiver issue? Did you argue that in your briefing? We were responding to plaintiff's arguments, and we did not argue forfeiture as to that issue. We did, and plaintiff mentions migraines. Plaintiff did not sufficiently brief migraines of severe impairment. The other thing that the ALJ was saying, referring to opioid use, and that was not part of the 2020 evaluation as well. Would you agree on that? I do agree. I think the most important thing that the ALJ looked at with the opinions of Dr. Packner and Dr. Sittu were that they were inconsistent with activities daily living. And those opinions were offered in 2018. And in 2018, we have the most evidence of his robust daily activities. Well, let me ask you this. You can go ahead. No, no. The first district court, we have the same ALJ, but two different district courts, okay? And the first district court in this case held that the ALJ erred in evaluating the medical evidence and in rejecting Mr. Swanson's testimony. In the ALJ's second decision, what did the ALJ do to cure the defects identified in the first district court's decision? It seems like, you know, I mean, when you write a long decision and you tell someone what they did wrong, and then it goes back, it would seem like, unless you want, you know, what did they say? Insanity's doing the same thing over and over again and expecting a different result. Well, unfortunately here, there was a different district judge and insanity did give a different result. But the ALJ didn't seem to respond to what the first district court said was problematic. The judge did give similar analysis as to those opinions in 2018, but the ultimate decision is quite different. And the same court, although different judges, the same district court did affirm that decision. And again, appellate doesn't make that argument in their briefing. And so we didn't directly respond to that argument because it wasn't briefed. And the ALJ did find in the second decision, something quite different. The ALJ found that Mr. Swanson was disabled, that he was disabled on February 1st, 2021. But then he has the benefit of the presumption when it goes back at that time, right? I'm sorry? Well, the first time he wasn't 50, right? Right. So when he goes back the other time and gets found disabled, he gets the presumption, right? Yes. I mean, I do want to clarify in terms of what appellant has said. When we look at the medical vocational guidelines and somebody is 50 years old and they're limited to sedentary work or a range of sedentary work, they're not automatically disabled. We look to see what was their past relevant work. Was it sedentary? Can they do that? So they get a presumption though of being disabled, right? But it's a rebuttable presumption. Is that what you're saying? That's whether they have any transferable skills. Well, no. You can have presumptions that if you're 50, end of story here. But that's not the case with this presumption? Correct. You're saying, but you get a different look. You fall into a different category once you turn 50, right? It is a different age category, yes. And so the fact that he gets found disabled the second time that he's there isn't entirely surprising because now he's 50, right? Well, it's less surprising because we have more evidence showing that his condition has worsened. And we have his testimony detailing that. And the ALJ directly relies on the decision on the testimony that he gave that it was worsening in that time in 2021. And then the objective medical evidence shows with imaging and objective examinations, the ALJ states, treatment is not as effective as it once was. So treatment was effective during the period at issue here. Examinations were relatively benign. Well, counsel, I don't want to talk about generalities. I want to talk about specifics. And specifically here, the ALJ set aside the Dr. Asawa and Staley because he found that those opinions, specifically the opinion of him needing to change positions several times an hour due to hip pain and limited remaining postural positions to be unpersuasive because there was no evidence of the use of a cane prior to 2021. What does that matter? What does that matter? Um, well, he says the cane, but he also says because of plaintiffs, I'm sorry, appellants, Mr. Swanson's, his functionality, his demonstrated functionality, the ALJ states that, not just the lack of a cane. But I think the lack of a cane also goes to his overall subjective complaints that I need to use a cane. I can't sit for any period of time, which is just completely contradicted by the record. What specific functionality are you referring to in the record that you can point me to? The need to change position. And so, um, in terms of, I mean, in. No, you just said that that was because of his functionality. Where in the record are you, what, what area.  Yes. So that I can find it. Yes. So, um, in terms of his functionality, he's demonstrated his ability to do certain things. So in 2018, he's, he's working at Lowe's, he's doing housework, he's working on cars, he's functioning. Let's stop here. This work at Lowe's. Okay. Which again, it's sort of like I was banging my head against the wall, trying to figure out where you're, where, where, how much was he working? Was it one day he made $162. Where do we know whether it was just the one day, um, or more? And in, in fact, it's my understanding that he experienced severe debilitating pain afterwards. How does that show that he's not disabled? So we don't have, um, Mr. Swanson doesn't point into the record where it was just one day. You do, you do mention the amount of money he made. So that would seem to be in line with their assertion that it was one day. Would there be any other? But there's, he's also working on cars. So just after surgery, days after surgery, he's working on cars. He says working on cars throughout 2018 and 2019, um, is an opportunity to exercise his neck. He's, he's functioning really well. And that's at the same time where we have, even if it's just one day at Lowe's, we have him working on cars. Aren't there the same indications after he says he's working on his car that he has debilitation after he works on his car? Aren't those also in the record? He, he does say that, but he continues to do it. And we have numerous... That's part of the evidence though, I guess. He worked at Lowe's, worked on his car and, and did some home renovations. But those records also indicate that Mr. Swanson experienced a high level of pain after those activities and had abnormal exam findings. So don't those records actually suggest that Mr. Swanson was unable to perform those activities? Well, I think they could, but in this case, we, if we look to, um, I would ask the court to look the 2012 and 2016 decisions where he was making the same allegations. He was, he had similar work activity. He was teaching his nephew how to do remodel work. He was, um, he's been riding a motorcycle, um, for a really long time and he has been riding a motorcycle into 2023. And he says pain medication enables him to ride a motorcycle. When it went back though, counsel, when it went back, why not ask, why, why not ask, hey, how long did you work at, at Lowe's? Hey, tell me about your daily, why wasn't that asked by the, the magistrate judge in this case? Um, I'm sorry, by the ALJ when it went back? I think the ALJ when it went back was really trying to determine at what point did you become disabled? Like explain to me when it worsened. And so the ALJ sought that testimony and, and, and Mr. Swanson described, you know, like two and a half years ago, it got really bad. It got to the point where I couldn't do the things I used to be able to do. And when you do the math from the August, 2023 hearing with that testimony, it brings us to February, 2021. And so I think the ALJ was trying to elicit testimony to understand this case better and perhaps could have asked more about that Lowe's work activity, but also got into a long conversation near the end of that hearing about, you know, his use of a motorcycle. And it just did seem to demonstrate that his abilities were much greater than he was alleging. Let's just assume hypothetically that we don't agree with you and that it has to go back. What is your position on award of benefits or whether other things have to be done for that period of time? I think absolutely other things have to be done. We need further testimony on the work activity and the other activities of daily living. He also mentioned I was seeking custody of my grandchildren. How old were your grandchildren? Depending on their age, that could imply a much greater ability than he's alleged. Does a vocational expert, as I asked your friend on the other side, have to look at a different RFC for that period of time? They have to look at all the evidence during the period at issue. And that'll include new testimony, which could lead to a different RFC and could lead to different vocational expert testimony or responses. Well, if we remand, why can't we say that the level of disability has been established through the credit as true rule and the only thing that we're looking at is available occupations? I don't think we can do that because of the activities of daily living that we have and because there are still things that we need to resolve. In this case, you're saying you disagree based on the facts. Is there a reason why we couldn't do that if we disagree with you? You can do whatever you want. We like to do the right thing. We like to do the right thing. I appreciate that. Okay. Any additional questions? All right. Your time's over and thank you for your argument. Do either side have a minute that they want to ask Mr. Janich any questions? All right. We don't have any additional questions, Mr. Janich. We took you over time as well. So this matter will now be submitted. Thank you both.
judges: CALLAHAN, MENDOZA, Snow